KAROLINA STRZEBINSKA *vs.* ANISIM JARY, *Ex.*

JULY 22, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Capotosto, J. This is an appeal from a decree of the probate court of the city of Providence admitting to probate an instrument purporting to be the last will and testament of Kataryna Bobowski, *alias*. The appeal was heard in the superior court by a justice sitting with a jury. At the conclusion of the testimony, the trial justice directed a verdict in favor of the will. The case is before this court on the appellant's exception to this action of the court and on certain other exceptions taken during the trial.

It appears from a none too clear record on this point that when the testatrix, Kataryna Bobowski, came to this country about twenty-eight years before her death in Providence on January 26, 1935, she left a husband, sisters and a stepson in Poland. Some years after the death of her husband

in Poland, she married one Jozef Zeberowski, *alias* Joseph Ziobrowski, and with him owned as joint tenants a house on Malbone street in Providence. Ziobrowski died July 31, 1932. She never married again.

The testatrix was about sixty-three years old when she died. She could not speak, read or write English. The will was drawn in the name of Kataryna Bobowski and was executed by her on September 29, 1934, under that name by cross. At the time of her death she was the sole owner of the house on Malbone street and had $610.50 in a savings account in a local bank. The will leaves her entire estate to one Anisim Jary, a boarder, who was not related to her in any way. He was also named executor in the will.

The main ground urged against the validity of the will is fraud and undue influence on the part of Jary and his friend, Ignacy H. Shilo, who is a witness to the will. It is sufficient for our purposes now to say that there was considerable testimony on this point and that Jary, who was present at the trial, failed to testify in explanation of testimony adverse to him. There is also testimony that both before and after signing the will the testatrix expressed the intention of leaving her property to her sister in Poland, and, further, that she did not realize that she had signed a will until it was suggested that she may have done so by a neighbor to whom she had gone for assistance. Assuming for the present that the identity and relationship of the appellant to the testatrix was sufficiently established by the evidence to constitute her a "person aggrieved" so as to maintain an appeal under out statute, it was reversible error for the court to direct a verdict in favor of the will under the facts in evidence. *Huebel* v. *Baldwin*, 45 R. I. 40; *Dart* v. *Rhode Island Hospital Trust Co.*, 45 R. I. 173; *Smith* v. *Smith*, 54 R. I. 402.

The appellant, who it is claimed is a sister of the testatrix, was in Poland and, as far as the record shows, is still living in that country. The will having been admitted to probate by the probate court of the City of Providence, an appeal

was duly taken to the superior court by her attorney, who was acting in her behalf under a power of attorney that was prepared by him in this country and apparently signed by her in Poland. The signature on the power of attorney is followed by the words "siostra Katarzymy Ziebrowskiey", meaning "sister" of the person named. The envelope which is attached to this power of attorney bears the stamps and postmarks of Poland and of the United States. The name of the testatrix's second husband was Ziobrowski. Whether the difference in the name quoted and the name of the testatrix by her second marriage as it appears in the record is due to phonetic spelling we are unable to tell.

Towards the latter part of the trial, the court questioned the sufficiency of this evidence to establish the identity and relationship of the appellant to the testatrix. In the discussion that followed, counsel for the appellant contended that the power of attorney, which was in evidence, was at least sufficient, under the peculiar circumstances in which he and his client found themselves, to raise a question of fact for the jury. The court rejected this contention and, having expressed the opinion that the "only way to get her evidence before the court is by deposition", counsel for the appellant formally moved that the case be taken from the jury and passed so that he might take his client's deposition in Poland. The trial justice instead of ruling on this motion instructed counsel to present further evidence on the question of appellant's identity and relationship, if any he had, at the afternoon session. An exception to this action of the court was duly noted in behalf of the appellant. When court reconvened, counsel attempted to introduce in evidence certain letters from the appellant but they were excluded and he was obliged to close his case. The appellee then moved for a direction of verdict in his favor.

Near the close of the discussion on appellant's motion for a directed verdict, counsel for the appellant again formally moved that the case be passed so that he might secure a deposition from his client through the United States consul

in Poland. In denying this motion, the court said that the motion came too late, for, although he was willing to give appellant's counsel an opportunity to take a deposition in Poland, he was then without power to grant his motion, since the appellee had moved to direct a verdict in his favor. To this ruling the appellant duly excepted.

In the instant case we are not concerned with the legal sufficiency of the evidence respecting the appellant's kinship to the testatrix. The real question before us is whether the court, being duly confronted with two different motions for a continuance in behalf of the appellant, exercised its judicial discretion in reference thereto.

In the trial of a case questions at times arise to which no strict rule of law is applicable but which from their nature and surrounding circumstances require the judgment of the court. These questions are to be determined by the court exercising its judicial discretion to further the ends of justice. Stated in general terms, judicial discretion means sound discretion, exercised not arbitrarily or willfully, but with just regard to what is right and equitable under the circumstances and the law. *Commonwealth* v. *Gallo,* 275 Mass. 320. This court has repeatedly held that, where a trial justice acts in the exercise of judicial discretion, his decision will not be reviewed by us, unless it is made to appear clearly that he abused this discretion in the circumstances or based his decision upon a mistake of law as to his powers. *Tillinghast* v. *Iverson,* 50 R. I. 23, 25; *MacKenzie & Shea* v. *Rhode Island Hospital Trust Co.,* 45 R. I. 407; *Camire* v. *Camire,* 43 R. I. 489. Where a question which calls for the exercise of judicial discretion is properly presented, it is the duty of the court to consider and determine that question so that the rights of the parties may be fairly protected in an orderly manner. It is as much an abuse of judicial discretion in refusing to exercise such discretion when warranted by the facts before the court as it is to exercise that discretion improperly by means of a decision that is clearly erroneous on the facts or under the law.

We know of no decision in our reports, and none has been brought to our attention, which holds that under our practice a motion to direct a verdict divests the court of its power to exercise judicial discretion in a meritorious case with unusual circumstances. Although the exercise of this power should not be abused. it remains with the court throughout the trial. In *Case* v. *Dodge,* 18 R. I. 661, the plaintiff was permitted to introduce in evidence the statutes of another state during the charge of the court to the jury. In *Greene* v. *Rhode Island Co.,* 38 R. I. 17, after both parties had rested and the defendant had completed its argument, the plaintiff, who had already made a portion of his argument, was permitted to reopen the case for the purpose of offering certain evidence deemed material, which first came to the attention of plaintiff's counsel at that time. In *Hampson* v. *Taylor,* 15 R. I. 83, after both parties had rested their case and *after a motion to direct a verdict* for the defendant had been made, the plaintiff was allowed to present new evidence as to a pertinent matter overlooked by him. In view of these decisions, the trial justice in the case at bar acted under a misconception of the law when he refused to rule on the appellant's motion for a continuance on the ground that such motion came "too late" when it followed a motion for a direction of verdict.

The appellant's exceptions to the denial of her motions for a continuance and to the granting of the appellee's motion for a directed verdict are sustained. In view of this conclusion, we see no reason to consider the other exceptions of the appellant.

The case is remitted to the superior court for a new trial.

*Arthur L. Conaty* for appellant.

*Thomas J. Flynn, James W. Leighton, Flynn & Leighton* for appellee.